EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Israel Morales Vargas<br><br>Peticionario<br><br>v.<br><br>Adoración Jaime Jaime<br><br>Recurrida | Certiorari<br><br>2005 TSPR 174<br><br>166 DPR \_\_\_\_ |

Número del Caso: CC-2002-908

Fecha: 23 de noviembre de 2005

Tribunal de Apelaciones:

>  Circuito Regional VI Caguas/Humacao/Guayama
>  Panel I

Juez Pnente

>  Hon. Carmen A. Pesante Martínez


Abogada de la Parte Peticionaria:

>  Lcda. Grisel Vanesa Crespo

Abogada de la Parte Recurrida:

>  Lcda. Myrna Delma Ortiz Delgado


Materia:  Alimentos Ex – Cónyuges


Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Israel Morales Vargas

    Peticionario

       v.

Adoración Jaime Jaime

    Recurrida                               Certiorari

                            CC-2002-908

Opinión del Tribunal emitida por la Jueza Asociada SEÑORA FIOL MATTA

En San Juan, Puerto Rico, a 23 de noviembre de 2005.

El presente caso nos permite atender dos asuntos de gran relevancia en materia de alimentos entre ex cónyuges y de interpretación legislativa. En primer lugar, debemos resolver cuál es la relación entre el artículo 109 del Código Civil de Puerto Rico, 31 LPRA 385 (2004), que se refiere a los alimentos entre ex cónyuges, y los artículos 142-144 del Código Civil de Puerto Rico, 31 LPRA 561-563 (2004), que regulan los alimentos entre parientes. En segundo lugar, este caso nos requiere aclarar la función jurídica de las ocho circunstancias añadidas al artículo 109 en 1995 mediante la Ley Núm. 25 de 16 de febrero de ese año.

I.

Las partes en este caso, Israel Morales Vargas y Adoración Jaime Jaime, se divorciaron el 5 de septiembre de 2001. Durante su matrimonio procrearon seis hijos, todos mayores de edad al momento del divorcio de sus padres.

El 17 de octubre de 2001, la señora Jaime Jaime presentó una petición de alimentos al amparo del artículo 109 del Código Civil, 31 LPRA 385. Alegó que carecía de medios suficientes para vivir, dado que nunca ejerció un trabajo por el cual percibiera un salario. También alegó que durante su matrimonio se dedicó a cuidar de sus seis hijos y a las labores del hogar.

El señor Morales Vargas se opuso a esta petición y presentó una moción de desestimación en la que argumentó que los llamados a alimentar a su ex cónyuge eran sus parientes más próximos. Adujo así que la señora Jaime Jaime venía obligada a reclamar alimentos en primer lugar a sus descendientes, en segundo lugar a sus ascendientes y en tercer lugar a sus parientes colaterales. Sólo entonces, si no podían cumplir los parientes antes mencionados, es que podría recurrir al artículo 109 del Código Civil.

Trabada la controversia y luego de la vista correspondiente, el tribunal de instancia declaró con lugar la moción de desestimación del señor Morales Vargas. Concluyó que "la promovente ha de reclamar en primer lugar

a sus descendientes, en segundo lugar a sus ascendientes y en tercer lugar a sus parientes colaterales, hermanos y sobrinos. De no poder éstos, entonces es de aplicación la obligación del ex-cónyuge." Al fundamentar su decisión, destacó que la señora Jaime Jaime "cuenta con descendientes y colaterales capacitados para ayudarle, dos de los hijos y la familia de uno de ellos, disfrutan y se benefician de la posesión de los bienes muebles e inmueble que [ella] ostenta, sin pagar canon o merced alguna por ello." También destacó que el señor Morales Vargas "asumió todas las deudas de la extinta sociedad legal de gananciales, no dejando deuda alguna" a la señora Jaime Jaime.[1]

---

[1]    El Tribunal de Primera Instancia hizo las siguientes determinaciones de hechos:

1.    La peticionaria nunca ha ejercido otra labor que la de madre, esposa y ama de casa.  Cursó hasta noveno grado de escuela intermedia. Cuenta con la edad de cincuenta y un años (51). Durante el matrimonio la única fuente de ingresos provino del peticionario, Dos[sic] Israel Morales Vargas.  El demandado hace cinco (5) años comenzó a trabajar en la Corporación del Fondo del Seguro del Estado en el área de archivo.

2. La peticionaria declaró que actualmente solamente cuenta con $180.00 mensuales que recibe por concepto de Programa de Asistencia Nutricional para ella y para su hija. Sus gastos personales $15.00, agua $15.00, energía eléctrica $80.00, transportación pública $15.00. Continua haciendo uso del Plan Médico de su esposo hasta abril de 2002, fecha en que cesará dicho beneficio. Tiene gasto mensual en medicina de aproximadamente $20.00 a $25.00. En cuanto a los demás gastos se sometió Planilla de Información Económica en evidencia. Conforme a la misma la peticionaria tiene un gasto mensual de $597.33.

3. También declaró que reside en el hogar ganancial y está en posesión y disfrute de los bienes y efectos propios del hogar. Actualmente viven en su hogar dos de sus hijos, ambos son mayores de edad.  Uno de ellos está casado y vive con su esposa y una hija, también en el hogar de la peticionaria. La demandada no trabaja, se ocupa de las tareas propias del hogar y ha cuidado de la nieta mientras su hijo y la esposa de éste trabajan.

4. Los servicios de la vivienda están a nombre del demandado, excepto el teléfono que está a nombre del hijo que vive en el hogar quien paga porque es suyo. Durante el matrimonio hubo deudas gananciales pero el demandado no le dejó deudas, ya que él las asumió.

Inconforme con esta determinación, la demandante acudió al Tribunal de Apelaciones. Ese foro revocó la decisión del tribunal apelado y le impuso al señor Morales Vargas la obligación de pagar a la señora Jaime Jaime una pensión alimentaria, aunque devolvió el caso al tribunal de instancia para que determinara la cuantía. El Tribunal de Apelaciones fundamentó su decisión en que "aun estableciendo que el ex-cónyuge reclamante puede acudir a sus parientes para alimentos, entendemos que en primera instancia éstos deben ser reclamados al ex-cónyuge, a tenor con el Artículo 109, supra. De éste no poder cumplir con dicha obligación y en atención a las circunstancias particulares del caso, el tribunal deberá evaluar si procede establecer la obligación de alimentar a los parientes, de conformidad a los Artículos 143 y 144".

El señor Morales Vargas acude entonces ante nosotros, alegando que el foro apelativo incidió al "determinar que el obligado en primera instancia a proveer alimentos es el ex-cónyuge y no sus parientes" y al "revocar al Tribunal de Primera Instancia, ya que la recurrida no probó su necesidad de alimentos." El 14 de febrero de 2003 expedimos el auto. Tras varios trámites, el 11 de agosto de 2003 dimos el recurso por sometido. Así, estamos en posición de resolver.

II.

---

5. El demandado trabaja en el Fondo del Seguro del Estado de Caguas y tiene un ingreso de $2,000.00 mensuales. Recibe un Bono de Navidad de $1,500.00. No tiene ningún otro tipo de trabajo. Reside con sus padres, quienes cuentan con la edad de 84 y 82 años respectivamente, en la residencia de éstos. Él paga todas las deudas gananciales que ascienden a $480.00 mensuales, además de una deuda de teléfono perteneciente a su hijo y que él tuvo que asumir. Dicha deuda era de $1,278.00 y paga $125.00 mensuales. Estudia los sábados un curso de reparación de computadoras. Alegó padecer de desbalance y tiene un gasto mensual de medicamento de $25.00 los cuales no cubre el

La controversia central del presente caso nos requiere dilucidar si hay alguna relación entre los artículos 109 y 142 del Código Civil de Puerto Rico y si como consecuencia de esa relación, existe un orden de prelación que obligue a un ex cónyuge a agotar los remedios de los artículos 142-144 antes de poder solicitar alimentos al amparo del artículo 109. Concluimos que el origen y propósito de cada uno de estos artículos es distinto, en tanto el artículo 142 establece una obligación puramente alimentaria, mientras que el artículo 109 establece una obligación *sui generis* que surge estrictamente como consecuencia del divorcio. Sin embargo, ambas obligaciones están investidas "del mayor interés público". González v. Suárez Milán, 131 D.P.R. 296, 301 (1992). Según señalamos en González v. Suárez Milán, "la obligación de dar alimentos surge del derecho fundamental de todo ser humano a existir y a desarrollar plenamente su personalidad. Por eso es un

'deber altamente social, que no depende de la voluntad del que le tiene, sino que se impone… como una de las condiciones necesarias de la vida progresiva de la humanidad'". *Id*. [citando a J.M. MANRESA Y NAVARRO, COMENTARIOS AL CÓDIGO CIVIL ESPAÑOL 782-83 (1956)].

**A. Los artículos 142-144 del Código Civil de Puerto Rico.**

Los artículos 142-144 del Código Civil de Puerto Rico regulan la obligación que nace del parentesco, dentro de ciertos límites y cuando concurren determinadas circunstancias. Son

---

plan. Tiene un préstamo de estudiante de $120.00

idénticos a los artículos de la misma enumeración en el Código Civil español. El primero define los alimentos como todo aquello que "es indispensable para el sustento, habitación, vestido y asistencia médica, según la posición social de la familia"; además, señala que los alimentos comprenden también la "educación e instrucción del alimentista cuando es menor de edad." El artículo 143 establece quiénes vienen obligados a proveerse alimentos recíprocamente, a saber, los cónyuges, los ascendientes y descendientes y los hermanos. Por último, el artículo 144 dispone un orden de prelación entre los llamados a darse alimentos, en aquellos casos en que concurran dos o más obligados. Según el orden así dispuesto, cuando sean dos o más los obligados, éstos lo estarán en el orden siguiente:

1. el cónyuge

2. los descendientes del grado más próximo.

3. los ascendientes también del grado más próximo.

4. los  hermanos

Además, el artículo 144 aclara que cuando los obligados sean descendientes y ascendientes entre sí, "se regulará la gradación por el orden en que sean llamados a la sucesión legítima de la persona que tenga derecho a los alimentos."

## B. El artículo 109 del Código Civil de Puerto Rico

En 1902, como consecuencia del cambio de soberanía ocurrido cuatro años antes, se realizó una importante revisión del Código Civil de Puerto Rico, con la intención principal de

mensuales. Tiene gasto de luz de $100.00 bi-mensual.

"armonizarlo" con el sistema americano.[2] Fue en ese contexto

histórico que se introdujo a nuestro país el artículo 109[3], sobre

alimentos entre ex cónyuges, copiado del artículo 160 del Código

Civil de Louisiana.[4] Éste, a su vez, se había redactado

utilizando como modelo el artículo 301 del Código Civil

Napoleónico o Código Civil francés de 1805.[5] De esta forma se

_____

[2]     El informe de la Comisión Codificadora designada por el
Presidente de los Estados Unidos con el propósito de enmendar
el Código Civil vigente en Puerto Rico, sostuvo que:

> Es indudable que la mente del Congreso fue [sic] poner
> las instituciones de la isla en más estrecha harmonía
> [sic] con el sistema americano, pero sin efectuar
> cambios repentinos.... Todo cambio violento que se
> hiciera despertaría las fuerzas para americanizar la
> isla.

Luis Muñoz Morales, Reseña Histórica y Anotaciones al Código Civil de P.R.
23 (1948).

[3]     El artículo 109 corresponde al artículo 177 del Código
Civil de Puerto Rico vigente entre 1902 y 1930, año en que se
reenumeró como el 109. Desde entonces no ha sufrido ningún
cambio estructural. Véase Teresita Picó de Silva, *Los alimentos
al ex-cónyuge: algunas consideraciones en torno a una reforma*,
40 Rev.Col. Abog. 29, 30-31(1983).

[4]     La versión que se adoptó fue la vigente en ese estado
en 1902 pero que databa de 1870, es decir, era anterior
al Código Civil español vigente en Puerto Rico, que fue
extendido a Puerto Rico en 1889. Raúl Serrano Geyls, *La
Nueva Ley de Pensiones Alimentarias Post-Divorcio*, 30 Rev.
Jur. U.I.P.R. 97, 97-98 (1996). Véase además Luis Muñoz
Morales, Reseña Histórica y Anotaciones al Código Civil de P.R.
258-276 (1948); <u>González v. Suárez Milán</u>, 131 DPR 296,
298-300 (1992).

[5]     El artículo 160 del Código Civil de Louisiana proveía lo
siguiente:

> If the wife who has obtained the divorce, has not
> sufficient means for her maintenance, the court may
> allow her, in its discretion, out of the property of
> her husband alimony which shall not exceed one-third
> of his income.
>
> This alimony shall be revocable in case it should
> become unnecessary, and in case the wife should
> contract a second marriage.

Por otro lado, el artículo 301 del Código Civil Francés
establece:

> Si los esposos no hubieran concedido ninguna ventaja,
> o si las estipuladas parecieren insuficientes para
> asegurar la subsistencia del esposo que hubiere
> obtenido el divorcio, el tribunal podrá concederle,
> sobre los bienes del otro cónyuge, una pensión

incorpora en nuestra jurisdicción, aunque de manera indirecta, el modelo francés de alimentos entre ex cónyuges.

Los artículos 160 de Louisiana y 109 de Puerto Rico establecieron ciertas variantes importantes con respecto al modelo francés.[6] Ambos limitaban la pensión únicamente a la mujer, mientras que la versión francesa se refería a cualquier cónyuge. Por otro lado, se establecía el subsiguiente matrimonio de la mujer como causa para revocar la pensión. A pesar de esas diferencias, estos artículos mantuvieron los caracteres fundamentales de la versión francesa. Es decir, los tres artículos concretaban tres reglas esenciales: a) tan sólo

---

alimenticia, que no podrá exceder del tercio de los ingresos del otro cónyuge. Esta pensión será revocable en el caso de que dejara de ser necesaria.

[6] La versión vigente antes de la Reforma de 1995 establecía lo siguiente:

Si la mujer que ha obtenido el divorcio no cuenta con suficientes medios para vivir, el Tribunal Superior podrá asignarle alimentos discrecionales de los ingresos, rentas, sueldos o bienes que sean de la propiedad del marido, sin que pueda exceder la pensión alimenticia [sic] de la cuarta parte de los ingresos, rentas o sueldos percibidos.

Si el divorcio se ha decretado por la causal de separación, la mujer podrá solicitar los alimentos a los que se refiere el párrafo anterior, si no cuenta con medios suficientes para vivir.

La pensión alimenticia [sic] será revocada si llegase a hacerse innecesaria, o cuando la mujer divorciada contrajese segundo matrimonio o cuando viva en público concubinato u observare vida licenciosa.

Esta disposición refleja la enmienda efectuada por la Ley Num. 90 de 1948, que alteró el artículo en cuatro aspectos fundamentales. En primer lugar se amplió la base del cómputo de la pensión, al incluir "ingresos, rentas y sueldos", además de los bienes propiedad del marido. En segundo lugar se añadió que la mujer que obtiene el divorcio por separación también se beneficiaría de estos alimentos. En tercer lugar se redujo el máximo de la pensión, de una tercera parte a una cuarta parte de los "ingresos, rentas o sueldos percibidos por el esposo". Por último, se añadieron dos circunstancias adicionales que conllevarían la revocación de la pensión: "vida en público concubinato" y "vida licenciosa". *Véase* Teresita Picó de Silva, *supra* en las págs. 37-38 (1983).

el ex cónyuge "inocente"[7] tenía derecho a la pensión, b) los recursos del ex cónyuge inocente debían ser insuficientes y los del "culpable"[8] suficientes para sufragar la pensión, c) se establecía un límite máximo para la pensión. *Véase* II Henri León Mazeaud y Jean Mazeaud, Lecciones de Derecho Civil, La Familia 501–516 (1959 Luis Alcalá-Zamora y Castillo, traductor).

Esta disposición se distinguía, en todas sus versiones[9], por su carácter subjetivista, ya que establecía la culpa como un elemento de umbral al determinar la pensión alimentaria. Debido a este elemento de "culpa", el pago de la pensión ex cónyuge se asemejaba a una obligación ex delicto y se alejaba de la típica obligación alimentaria.

En la doctrina francesa, esta dualidad dio lugar a cierta controversia sobre la naturaleza jurídica de la pensión. Para algunos tratadistas, la pensión de ex cónyuge suponía una obligación alimentaria y constituía esencialmente una manifestación de la obligación de socorro entre esposos.[10] Es decir, se concebía esta pensión como una extensión de la obligación entre parientes, que aún disuelto el matrimonio obligaba a los ex cónyuges. Esta concepción estaba reñida con la idea de que el divorcio rompía todo vínculo entre los ex cónyuges.[11] Otro sector de la doctrina percibía esta pensión

---

[7]    Se entendía por cónyuge inocente aquél que, no habiendo cometido ninguno de los hechos contemplados en las causales de divorcio, obtenía el mismo.

[8]    Se entendía por cónyuge culpable aquél que cometió alguna de las faltas contempladas dentro de las causales de divorcio y por ende provocaba el mismo.

[9]    Artículo 109 del Código Civil de Puerto Rico, 160 del Código Civil de Louisiana y 301 del Código Civil Francés.

[10]    *Véase* artículo 142 del Código Civil de Puerto Rico.

[11]    Idea que se manifiesta claramente en nuestro ordenamiento en el artículo 105 del Código Civil que dispone que "el divorcio lleva consigo la ruptura completa del vínculo matrimonial y la

como una "aplicación pura y simple al divorcio de los principios generales de responsabilidad civil.[12] La pensión es de esa forma vislumbrada como una indemnización debida por el [ex cónyuge] responsable del divorcio al que es la víctima de su culpa, como reparación del perjuicio causado." MAZEAUD, *supra* en la pág. 510.[13]

Ambas corrientes recibieron fuertes críticas, dando lugar a una tercera corriente ecléctica, para la cual la pensión de ex cónyuge es de naturaleza mixta. Se señala entonces que "el perjuicio que tiene por objeto reparar el abono de la pensión alimentaria es exclusivamente el que resulta de la cesación de la vida conyugal; es decir, de la extinción, por falta del cónyuge culpable, de la obligación del artículo 212 [142 del Código Civil de Puerto Rico, 31 LPRA 561 (2004)], que caracterizaba la vida conyugal y que no puede sobrevivirle." II MARCELO PLANIOL Y JORGE RIPERT, TRATADO DE DERECHO CIVIL FRANCÉS, LA FAMILIA 497-498 (1939, traducción de Mario Díaz Cruz). Según esta teoría, la obligación de pagar pensión de ex cónyuge está basada en la culpa, e indemniza al cónyuge inocente por la eliminación de la obligación de socorro entre parientes causada por el cónyuge culpable al provocar el divorcio. Precisamente, por ser el cónyuge culpable el causante de la ruptura, éste venía obligado a subsanar las consecuencias patrimoniales de la

---

separación de propiedad y bienes de todas clases entre los cónyuges".

[12]   *Véase* artículo 1802 del Código Civil de Puerto Rico.
[13]   En Rubio v. Roig, 84 DPR 344, 359 (1962) y Suria v. Fernández, 101 DPR 316, 319 (1973), hicimos referencia a esta teoría cuasi delictual, si bien en ninguno de estos casos estaba en controversia la naturaleza jurídica de la pensión de ex cónyuge.

separación. La teoría mixta fue suscrita eventualmente por la mayoría de la doctrina francesa y su jurisprudencia.[14]

De acuerdo a la teoría mixta, la pensión ex cónyuge combina elementos de pensión alimentaria propiamente dicha y elementos de obligación ex delicto. De cada uno de estos elementos se deriva una serie de reglas. Así, se considera que por su carácter alimentario, la pensión es inembargable, varía con las necesidades del acreedor y los recursos del deudor y no es transmisible activamente.  II Henri León Mazeaud y Jean Mazeaud, Lecciones de Derecho Civil, La Familia 510 (1959 Luis Alcalá-Zamora y Castillo, traductor). En cuanto a su carácter indemnizatorio, la doctrina señala que la pensión de ex cónyuge se debe tan sólo cuando el perjuicio es la consecuencia directa del divorcio; por esa razón también, según ese sector de la doctrina, se puede transmitir pasivamente. II Henri León Mazeaud y Jean Mazeaud, Lecciones de Derecho Civil, La Familia 510 (1959 Luis Alcalá-Zamora y Castillo, traductor).

Debemos resaltar una característica que resulta pertinente a la controversia que suscita el presente caso y que se deriva del carácter cuasi-delictual atribuido por la doctrina francesa al artículo 109, como elemento que lo diferencia sustancialmente de las obligaciones típicas alimentarias. Basado en ese carácter cuasi-delictual, la doctrina francesa suscribió una teoría de causalidad, según la cual el divorcio era causa de la obligación alimentaria

---

[14]   Al respecto *véase* I C. E. Mascareñas, Curso de Derecho Civil, 303 (1961).

y la necesidad económica debía surgir como efecto de éste. Así, "generalmente el señalamiento de la pensión de alimentos se hace por la sentencia de divorcio" por lo que "habrá que referirse al pronunciamiento de la sentencia del divorcio para apreciar si el demandante está falto de recursos. Efectivamente la indemnización se funda sobre el perjuicio que al cónyuge inocente causa el divorcio y la ausencia de recursos posterior no se toma en consideración." HENRI LEÓN MAZEAUD Y JEAN MAZEAUD, LECCIONES DE DERECHO CIVIL, LA FAMILIA 516 (1959). La jurisprudencia francesa acogió esta visión de la pensión, al sostener que el estado de necesidad del cónyuge reclamante debía surgir como consecuencia del divorcio y no por otras circunstancias. MAZEAUD, *supra* en la pág. 501-16.[15]

---

[15]     Debemos dejar claro que, en la actualidad, la pensión de ex cónyuge en Francia es sustancialmente distinta. A la versión que establecía el artículo 301 le fueron formuladas muchas críticas: "su monto, a veces irrisorio..., las dificultades encontradas por los acreedores, de hecho siempre las mujeres, para obtener el pago regular, **la dramatización del proceso para obtener un divorcio por culpas exclusivas**, el contencioso que siempre podía volver a suscitarse para la revisión de la pensión. Por tales razones se imponía una reforma." MIREILLE DELMAS-MARTY Y CATHERINE LABROUSE-RIOU, MATRIMONIO Y DIVORCIO 90 (1987, Diego Martínez, traductor).

Como consecuencia de las críticas, hoy día la pensión ex cónyuges en Francia es de naturaleza compensatoria. Sobre este importantísimo cambio Mireille Delmas-Marty y Catherine Labrouse-Riou explican que el legislador "sustituyó la pensión por una prestación compensatoria cuyo espíritu y técnica son diferentes." Señalan además que esta prestación se encuentra desligada de la culpa en el divorcio y puede favorecer a un esposo en caso de culpas compartidas. Es decir, que no se sanciona la falta y tampoco constituye una prolongación del deber de auxilio entre cónyuges, el cual desaparece. Se caracteriza además, por ser una suma fija, no sujeta a revisión, que se concederá en general al momento del divorcio. En fin, la nueva pensión trata de "compensar en la medida de lo posible la disparidad que crea la ruptura del matrimonio en las condiciones de vida respectivas." MIREILLE DELMAS-MARTY Y CATHRINE LABRUSSE-RIOU, MATRIMONIO Y DIVORCIO 90-91 (1987, Diego Martínez Arango, traductor). Nótese además que esta prestación es similar a la pensión compensatoria que impera en España y que discutimos más adelante en las notas.

La teoría de la causalidad fue acogida en Puerto Rico por Mascareñas, quien sostuvo que "la necesidad de la mujer ha de ser actual en el momento del divorcio." A su entender, si la necesidad se producía después de decretado el divorcio, no procedía la pensión, pues "[l]a necesidad o falta de medios ya no será debida a la disolución del matrimonio, que es el fundamento que determina la pensión de la mujer divorciada." I C. E. MASCAREÑAS, CURSO DE DERECHO CIVIL, 300 (1961).

Podemos concluir a este punto que la pensión alimentaria del artículo 109, en su versión anterior a la enmienda de 1995, constituía una pensión alimentaria *sui generis* que tenía elementos de la típica pensión alimentaria entre parientes y elementos de responsabilidad civil.[16] Examinemos ahora las enmiendas que el legislador realizó en este artículo en 1995.

**C. Las enmiendas de 1995**

Mediante la Ley Núm. 25 de 16 de febrero de 1995, se enmendó el artículo 109, con el propósito principal de eliminar de su redacción la limitación en cuanto a cuál de los ex cónyuges podía ser acreedor a la pensión. Se introduce entonces la posibilidad de que el hombre también lo sea. La Exposición de Motivos explica que la versión anterior "representa un trato diferente y discriminatorio contra el hombre por razón de sexo", incorporando así lo que este Tribunal resolvió mediante

---

[16] La jurisprudencia interpretativa del artículo 109 antes de 1995 no aborda directamente el asunto de la naturaleza jurídica de la pensión ex cónyuge. La jurisprudencia posterior, aunque trata el asunto en algún grado, no lo hace en forma abarcadora. *Véanse* Cantellops v. Cautiño 146 DPR 791 (1998); Soto López v. Colón Meléndez, 143 DPR 282 (1997); Díaz v. Alcalá 140 DPR 959 (1996); González v. Suárez Milán, *supra*; Milán Rodríguez v. Muñoz, 110 DPR 615 (1981); Casiano v. Tribunal Superior, 101 DPR 327 (1973); Rubio Sacarello v. Roig, 84 DPR 344 (1962); Meléndez v. Tribunal Superior 77 DPR 535 (1954); Puigdollers v. Monroig, 26 DPR 310 (1918).

interpretación en <u>Milán v. Muñoz</u>, 110 DPR 610 (1981).[17] El historial legislativo también refleja la clara intención de eliminar la culpa como criterio de umbral para la concesión de la pensión, puesto que, según explica el Informe de la Comisión de Gobierno al Senado de Puerto Rico: "la reforma de 1976 ha ido desapareciendo el concepto de culpa vinculado al divorcio desde que se instituyó éste en nuestra jurisdicción."

En este último aspecto, nuestra legislación se sumó a la corriente europea más moderna, que reconoce que las obligaciones alimentarias deben estar ajenas a la dicotomía de "cónyuge inocente" y "cónyuge culpable". Véase HERMINIA CAMPUZANO TOME, LA PENSIÓN POR DESEQUILIBRIO ECONÓMICO EN LOS CASOS DE SEPARACIÓN Y DIVORCIO, 17-22 (1986).[18] La ley de 1995 añadió al artículo 109 la posibilidad de modificar la pensión por alteraciones sustanciales en las

---

[17]   Allí dijimos que: "... el esquema legislativo cristalizado en el artículo en cuestión representa, de su faz y sin lugar a dudas, un trato diferente, injustificado y discriminatorio contra el hombre por razón de sexo, que al presente-bajo el prisma de un riguroso escrutinio judicial y a menos que oportunamente detectemos la cualidad de doble refracción- no puede prevalecer. Sus antecedentes demuestran que su texto-inalterado hasta la actualidad por más de cien años bien responde a una concepción arcaica y esteriotipada de la función tradicional limitada que indefectiblemente se le atribuía en al antaño a la mujer: hogar y madre...." <u>Milán v. Muñoz</u>, 110 DPR 610,615 (1981).

[18]   El profesor Raúl Serrano Geyls también discute esto al señalar que la corriente vigente en Europa y aceptada en sistemas en los cuales la culpa ya no es causal para los divorcios es eliminar la culpa como presupuesto para la concesión de la pensión. Valga aclarar que en dicho aspecto esos sistemas se diferencian del nuestro ya que aquí aún existen causales de divorcio culposas, aunque acompañadas de causales no culposas como la separación y el divorcio por consentimiento mutuo. En cuanto a la relación entre la culpa y la pensión, el mismo autor indica que con la pensión de tipo objetivo se busca "no premiar al cónyuge inocente" por razón de serlo, sino más bien se pretende reparar los perjuicios económicos causados por la disolución del matrimonio. Se sugiere que las ventajas de este sistema se derivan del ahorro-a nuestro entender emocional y económico- de las siempre angustiosas investigaciones sobre culpabilidad o inocencia de los ex cónyuges. Raúl Serrano Gelys, *La nueva ley de pensiones alimentarias post-divoricio*, 30 REV. JUR. UIPR 97, 111-112 (1996), citando a I MANUEL AMORÓS GUARDIOLA, ET AL., COMENTARIOS A LAS REFORMAS DEL DERECHO DE FAMILIA, 617 (1984).

circunstancias, ingresos y la fortuna de uno u otro cónyuge. Por

último, eliminó el criterio de "vida licenciosa" como causal

para revocar la pensión alimentaria.[19]

Sin embargo, la reforma de 1995 no alteró la medida de

"necesidad"[20] como criterio para la concesión de la pensión. Es

decir, se descartaron los modelos de España[21], Francia e Italia,

---

[19]   La nueva versión lee como sigue:

Si decretado el divorcio por cualesquiera de las causales que establece el artículo 96, cualesquiera de los ex cónyuges no cuenta con suficientes medios para vivir, el Tribunal de Primera Instancia podrá asignarle alimentos discrecionales de los ingresos, rentas, sueldos o bienes que sean de la propiedad del otro cónyuge.

El tribunal concederá los alimentos a que se refiere el párrafo anterior, teniendo en cuenta, entre otras, las siguientes circunstancias:

(a)  Los acuerdos a que hubiesen llegado los ex cónyuges.
(b)  La edad y el estado de salud.
(c)  La cualificación profesional y las probabilidades de acceso a un empleo.
(d)  La dedicación pasada y futura a la familia.
(e)  La colaboración con su trabajo en las actividades mercantiles, industriales o profesionales del otro cónyuge.
(f)  La duración del matrimonio y de la convivencia conyugal.
(g)  El caudal y medios económicos y las necesidades de uno y otro cónyuge.
(h)  Cualquier otro factor que considere apropiado dentro de las circunstancias del caso.

Fijada la pensión alimenticia,[sic] el juez podrá modificarla por alteraciones sustanciales en la situación, los ingresos y la fortuna de uno u otro ex cónyuge. La pensión será revocada mediante resolución judicial si llegase a hacerse innecesaria, o por contraer el cónyuge divorciado acreedor a la pensión nuevo matrimonio o viviese [sic] en público concubinato.

[20]   Esta medida se establece al requerir que el ex cónyuge reclamante "no cuente con suficientes medios para vivir." artículo 109 del Código Civil de Puerto Rico.

[21]   En 1981, como consecuencia de la extraordinaria reforma del derecho civil español tras la trasformación del estado español en uno democrático, se introdujo en España la institución del divorcio y se incorporó la figura de la pensión de ex cónyuge por desequilibrio económico. En ese momento el ámbito jurídico europeo era dominado por el modelo francés que había establecido la "prestación compensatoria". Dicho modelo, como señalamos en la nota 14, había sufrido su propia enmienda y había abandonado el sistema de culpa del antiguo artículo 301. *Véase* HERMINIA

donde se concede la pensión a base del desequilibrio económico entre los ex cónyuges y no a base de la necesidad del cónyuge reclamante.[22]

En cuanto a la naturaleza jurídica de este artículo en Puerto Rico, podemos destacar que al eliminarse el criterio subjetivo de la culpa, el criterio de necesidad resulta primordial para determinar la concesión de la pensión. Con ello, el modelo seguido por el legislador en las enmiendas de 1995 acerca la pensión de ex cónyuge aún más a una obligación puramente alimentaria o a lo que la doctrina ha caracterizado como un sistema objetivo para determinar la pensión. ALBALADEJO, *supra* en la pág. 431. No obstante, esta nueva versión del artículo 109 no eliminó completamente las consideraciones subjetivas, ya que en los nuevos incisos (d), (e) y (f) que discutiremos más adelante, se invita al juzgador a escudriñar la aptitud de los ex cónyuges hacia la vida matrimonial. En este sentido, el artículo enmendado sólo elimina la subjetividad parcialmente e instituye un sistema más bien cuasi-objetivo.

---

CAMPUZANO TOME, LA PENSIÓN POR DESEQUILIBRIO ECONÓMICO DE LOS CASOS DE SEPARACIÓN Y DIVORCIO 33-65 (1986) Y CARLOS LALANA DEL CASTILLO, LA PENSIÓN POR DESEQUILIBRIO ECONÓMICO EN CASO DE SEPARACIÓN O DIVORCIO 89-157 (1993).

[22] En cuanto a las diferencias entre las medidas de necesidad y desequilibrio económico, la doctrina española identifica la primera con las obligaciones alimentarias de los artículos 142 y siguientes de su Código, es decir, las obligaciones entre parientes. Así, la doctrina sostiene que la obligación de alimentos y la pensión por desequilibrio económico, son instituciones distintas que responden a presupuestos y fundamentos diferentes: "La primera de ellas ... obedece a criterios de necesidad; nace con el fin de proveer lo indispensable para atender las exigencias vitales, tomando como base... la necesidad del que solicita y los recursos del obligado." HERMINIA CAMPUZANO TOME, LA PENSIÓN POR DESEQUILIBRIO ECONÓMICO DE SEPARACIÓN Y DIVORCIO, 19 (1986). De manera distinta, la pensión por desequilibrio económico constituye un presupuesto más amplio que la necesidad, en cuanto no está solamente destinado a cubrir las necesidades vitales, sino también, y fundamentalmente, a restablecer o reparar el perjuicio económico derivado de la ruptura de la vida conyugal. *Id.*

Por otra parte, las enmiendas de 1995 también parecen vincular la obligación alimentaria de ex cónyuge más directamente con el divorcio. Al exigir, por ejemplo, que el juzgador tome en consideración la duración del matrimonio y de la convivencia conyugal al fijar la pensión (inciso (f)), se reconoce una relación entre el divorcio, es decir, la terminación de esa convivencia conyugal y el estado de necesidad que da base a la pensión. De esa manera, se contempla que la necesidad económica alegada sea consecuencia de y guarde relación con el divorcio. Según vimos, la vinculación de la necesidad con el divorcio es consistente con la doctrina española y europea en general. Acorde a lo anterior, la obligación alimentaria regulada por el artículo 109 es secuela de la ruptura conyugal, es decir, nace de ese evento y va dirigida a conjugar las necesidades alimentarias derivadas del divorcio.

Esta conclusión no resulta tan sólo de la letra enmendada del artículo 109, sino que corresponde a la estructura lógica del Código Civil. El artículo 109 está incluido en el Libro Primero del Código Civil, Título IV, Capítulo V, dedicado a los "efectos del divorcio". Dada la naturaleza de nuestro Código como un "todo armónico,"[23] esta ubicación no responde tan sólo a la lógica de su redacción, sino que tiene también un valor normativo. El Código establece un artículo particular para las

---

[23]   *Véase* JOSÉ LACRUZ BERDEJO, ELEMENTOS DE DERECHO CIVIL, PARTE GENERAL 26 (1974). "No se trata, como en las antiguas compilaciones, de una acumulación de textos inalterados de diversas épocas, desprovistos de una unidad interna referidos a una pluralidad inorgánica de supuestos concretos, conservando cada uno su valor y eficacia, sino de un sistema de reglas orgánicamente subordinadas y coordinadas, con pretensiones de generalidad y plenitud, agrupadas por institutos y redactadas en forma escueta y concisa...."

necesidades que son resultado del divorcio[24], otro para las necesidades alimentarias mientras está pendiente el divorcio[25] y otro para aquellas que surgen mientras el alimentista está casado o tiene parientes dentro de los grados especificados[26]. Las necesidades atendidas en el contexto del parentesco, matrimonial o de otro tipo, pueden presentarse en cualquier momento y por cualquier causa, ya que tienen un carácter genérico. Es forzoso concluir que cuando la necesidad del reclamante esté vinculada al divorcio o surja como consecuencia de éste deben reclamarse alimentos al ex cónyuge al amparo del artículo 109. Sólo si el ex cónyuge reclamado no cuenta con medios suficientes, es que corresponde a los parientes enumerados en el artículo 143 suplir las necesidades del reclamante, siguiendo el orden de prelación del artículo 144. Este es el esquema normativo resultante de la lógica estructural del Código Civil y es consistente también con nuestras reglas de interpretación de normas específicas y normas generales.

Consideramos, además, que esta interpretación de la relación entre los artículos mencionados es cónsona, no sólo con la regulación de los alimentos entre parientes y los ex cónyuges en disposiciones separadas, sino con el efecto radical del divorcio en nuestro ordenamiento.[27] Asimismo, está en armonía

---

[24]   Artículo 109 del Código Civil de Puerto Rico, 31 LPRA sec. 385.

[26]   Artículo 100 del Código Civil de Puerto Rico, 31 LPRA sec. 343.

[26]   Artículo 143 del Código Civil de Puerto Rico, 31 LPRA sec. 562.

[27]   Véase el artículo 105 del Código Civil, que dispone que: "El divorcio conlleva la ruptura completa del vínculo matrimonial y la separación de propiedad y bienes de todas clases entre los cónyuges".

con nuestra jurisprudencia, que reconoce la separación clara de cada una de éstas obligaciones. Por eso,

en Meléndez v. Tribunal Superior, 77 DPR 535 (1954), señalamos que: "los alimentos de la mujer casada, en su carácter de cónyuge, y los que se conceden a la mujer que ha obtenido el divorcio, no se rigen por las mismas disposiciones legales". Más adelante indicamos que: "Una vez disuelto el vínculo matrimonial por el divorcio... cesa la obligación que bajo el artículo 143 tienen los cónyuges." *Id.*

Debemos señalar que la interpretación que adoptamos en nada altera el asunto medular resuelto en Suria v. Fernández, 101 DPR 316 (1981), en cuanto a la imprescriptibilidad de la obligación alimentaria entre ex cónyuges, si bien los fundamentos de dicha decisión, relacionados a la necesidad de aliviar la situación "desesperada" de la mujer divorciada, no están necesariamente vigentes bajo el ordenamiento actual.[28] La acción bajo el artículo 109 no prescribe, según resolvimos en Suria v. Fernández, supra, siempre que las peticiones de alimentos entre ex cónyuges, aunque puedan reclamarse *ad perpetuam*, estén vinculadas en relación de causalidad con el divorcio.[29] La

---

[28]   En ese caso resolvimos, entre otras cosas, que la pensión dispuesta en el artículo 109 es una institución a favor de la mujer inocente que debido a su carácter alimentario no está sujeta a prescripción.  Concluimos que una mujer podía reclamar alimentos de su esposo doce años después del divorcio.  La opinión estuvo fundamentada en fuertes consideraciones de índole moral y por esa razón fue criticada por la doctrina. *Véase* Raúl Serrano Geyls, *La nueva ley de pensiones alimentarias post-divorcio*, 30 Rev. Jur. UIPR 97 (1996).

[29]   Según Serrano Geyls, la pensión "post divorcio ... debería fundarse exclusivamente en la situación económica de los ex cónyuges prevaleciente a la fecha de decretarse el divorcio y debería tener una duración limitada… para que el cónyuge pueda recuperarse económicamente, con la sola excepción de los casos de incapacidad temporaria o permanente del alimentista para trabajar, en cuyo caso, el término de la pensión podría extenderse. Me parece injusto y enteramente contrario al divorcio vincular, mantenerse ese derecho vitaliciamente como si las partes siguieran casadas, o como si un ex cónyuge fuera responsable de las necesidades del otro **que no se originaron**

necesidad de la pensión puede surgir, por ejemplo, por la terminación del deber de socorro entre los esposos, o por la falta del sustento cotidiano al que había estado acostumbrado el cónyuge reclamante.

En conclusión, resolvemos que los artículos 109 y 142 son disposiciones separadas que se refieren a obligaciones distintas. Disponemos además que sólo debe recurrirse a los parientes indicados en el artículo 142 cuando el ex cónyuge reclamado no pueda sufragar los alimentos del ex cónyuge reclamante. En este sentido, la decisión del Tribunal de Apelaciones es correcta.

### D. Los ocho criterios añadidos en 1995

Las conclusiones anteriores atienden el problema principal que suscita el presente caso, mas no lo resuelve por completo. El Tribunal de Apelaciones determinó que la recurrida era acreedora a una pensión de ex cónyuge, si bien devolvió el caso para que instancia determinara la cuantía. Respecto a esto, el peticionario argumenta que la demandante no demostró que cumplía con el factor de necesidad, pues no presentó prueba sobre incapacidad o imposibilidad para generar ingresos. Parece entender que la nueva redacción del artículo 109 impone una carga probatoria particular a quien reclama alimentos. En ese sentido, sugiere que la parte reclamante de alimentos debe demostrar específicamente que posee alguna incapacidad física o mental o que no es capaz de generar ingresos.

Algunos miembros de este Tribunal acogen esta teoría y concluyen que las circunstancias añadidas al artículo 109 en 1995 constituyen criterios valorativos que deben considerarse tanto para decidir si se concede la pensión como para determinar su cuantía. Aplicando este concepto, concluyen,

---

**en el divorcio.**" Raúl Serrano Gelys, *supra* en la pág. 112 (1996), énfasis nuestro.

específicamente, que por razón de las enmiendas la cónyuge reclamante en este caso tiene que traer prueba sobre las gestiones realizadas por ella para procurarse un empleo y sobre enfermedades o incapacidades que la inhabiliten para ejercer un trabajo. A la luz de lo antes dicho, resulta necesario aclarar el alcance de las circunstancias añadidas en 1995.

Como ya explicamos anteriormente, el modelo normativo del listado de circunstancias incorporadas al artículo 109 en 1995 es el artículo 97 del Código Civil español. La disposición española dota al cónyuge "al que la separación o divorcio produce desequilibrio económico" respecto al otro, del "derecho a una pensión que **se fijará** en la resolución judicial, teniendo **en cuenta...**" entre otras, las circunstancias que corresponden a las que fueron incorporadas a nuestro artículo 109 en 1995 (énfasis nuestro).

Expresado de esa forma, la doctrina española ha interpretado que el juez debe considerar estas ocho circunstancias "para fijar la cuantía de la pensión **y no para decidir si procede o no a concederla,** pues ello debe hacerse conforme a lo establecido en el primer párrafo del artículo 97." II MANUEL ALBALADEJO, COMENTARIOS AL CÓDIGO CIVIL Y COMPILACIONES FORALES, 431 (1981)(Gabriel García Cantero, autor del comentario), énfasis nuestro.

Al añadir las circunstancias enumeradas en el artículo 97 del Código Civil español a nuestro artículo 109, el legislador varió el texto introductorio. Según nuestro texto, "[e]l Tribunal **concederá** los alimentos... **teniendo en cuenta**" las circunstancias ya mencionadas (énfasis nuestro).  Esta redacción sugiere que los criterios añadidos simplemente buscan "nutrir la conciencia del juzgador al fijar el monto de la

pensión". <u>Díaz v. Alcalá</u>, 140 DPR 959, 978 (1996). El examen del historial legislativo, en particular la explicación sobre el "alcance de la medida" del Informe de la Comisión de Gobierno sobre el Proyecto del Senado 652 de 5 de abril de 1995, no arroja luz en cuanto a si esa diferencia indica la intención legislativa de que las circunstancias añadidas sirvieran también para determinar la procedencia de la pensión. Explica el Informe que:

> ... la concesión de alimentos al ex cónyuge debe basarse en otros criterios además que [sic] la culpa. Hasta ahora, los criterios tradicionales están basados en la necesidad del alimentista y los recursos económicos del obligado. A estos efectos la Comisión de Gobierno considera necesario añadir algunas circunstancias que podrá también tomar en consideración el juez **en la determinación de alimentos al ex-cónyuge**, adoptados del artículo 97 del Código Civil español. **El propósito de esta enmienda es contribuir a la orientación de la discreción judicial y satisfacer las necesidades de los ex-cónyuges** sobre las bases reales de la institución del matrimonio (énfasis nuestro).

En <u>Díaz v. Alcalá</u>, *supra*, al referirnos a los alimentos de ex cónyuge a la luz del artículo 109 luego de las enmiendas de 1995, citamos *in extenso* la doctrina española, en particular aquella tocante a la naturaleza de la pensión compensatoria entre ex cónyuges. Apoyados en esta corriente doctrinal, dijimos específicamente que los ocho criterios añadidos al artículo 109 "serán los elementos de juicio judiciales **para fijar el monto** de cualquier pensión post divorcio." <u>Díaz v. Alcalá</u>, supra, en la pág. 982, énfasis nuestro. El análisis requerido a propósito de la controversia específica del presente caso nos lleva a reiterar que la mayoría de las enmiendas de 1995 son aplicables al monto de

la pensión.     Los únicos elementos verdaderamente nuevos añadidos al artículo 109 en 1995 son aquellos que resultan pertinentes para fijar el monto de la pensión, según expusimos en Díaz v. Alcalá, *supra*. Ahora bien, **ninguno** de los ocho criterios añadidos, ni los nuevos ni los que ya estaban prefigurados en la jurisprudencia, **añade una carga probatoria específica a la reclamación**. Veamos el listado más de cerca.

*(a) Acuerdos a que hubiesen llegado los ex cónyuges*

En España, la posibilidad de que los cónyuges hubiesen llegado a ciertos acuerdos guarda relación con el artículo 90 de su Código Civil, que regula los acuerdos voluntarios de los ex cónyuges referentes a la regulación de los efectos de la nulidad, separación o divorcio, y aquellos acuerdos relacionados con la regulación de la

separación o divorcio por consentimiento mutuo. Estos acuerdos deben referirse, entre otros extremos, a la pensión "que conforme al artículo 97 correspondiere satisfacer, en su caso, a uno de los cónyuges." Aunque en Puerto Rico no hay una disposición similar, la posibilidad de un acuerdo de este tipo puede ser pertinente tanto para la concesión de la pensión como para determinar su cuantía. Sin embargo, no importa lo pactado previamente por los cónyuges, la existencia de un acuerdo no sustituye, sin más, el criterio primordial de necesidad establecido en el primer párrafo del artículo 109.[30]

*(b) La edad y estado de salud.*

---

[30] Al respecto *véase* Cantellops v. Cautiño, 146 DPR 791, 806 (1996), donde dijimos expresamente que "…por estar la institución de alimentos revestida del mayor interés público, cualquier acuerdo que se hubiere efectuado, no tiene, ni puede tener carácter invariable, o constituir una renuncia a derechos futuros de alimentación."

(c) *La cualificación profesional y probabilidades de empleo.*

El factor (b), según la doctrina, se refiere tanto a la edad y salud del reclamante como a la del reclamado. El juzgador debe ser cuidadoso al evaluar estas circunstancias debido al efecto que éstas pueden tener sobre la productividad de un individuo. Explica el profesor Serrano Geyls que este parámetro sirve "para determinar la vida ocupacional que le queda a una persona".[31]

Las circunstancias incluidas en el inciso (c) también aplican a ambos ex cónyuges, puesto que la cualificación profesional y las probabilidades de empleo son inversamente proporcionales a la necesidad y directamente proporcionales a la capacidad para sufragarla.[32]

No podemos concluir que la consideración de estas circunstancias imponga al ex cónyuge reclamante la obligación específica de demostrar que no es joven, no está en buen estado de salud y no tiene capacidad para trabajar. Más bien, son circunstancias relacionadas con la necesidad del ex-cónyuge reclamante y la capacidad de aportación del otro ex-cónyuge que no constituyen nuevos criterios sobre los cuales debe presentarse prueba, sino que fueron elaborados jurisprudencialmente, junto a muchos otros, para guiar la

---

[31]    Raúl Serrano Geyls, *supra* en la pág. 117. Distinto a otros miembros de este Tribunal, consideramos que una persona de 51 años de edad **no es joven para propósitos de insertarse, por primera vez, en el mercado de trabajo.**

[32]    En cuanto al criterio de "cualificación profesional y probabilidades de empleo" tenemos que rechazar la conclusión de miembros de este Tribunal a los efectos de que la recurrida está capacitada para trabajar. Entendemos que correspondería, en cualquier caso, al foro de instancia determinar la capacidad de trabajo de la peticionaria.

discreción del juzgador respecto a la solicitud del excónyuge reclamante. *Véanse* <u>Cantellops v. Cautiño</u>, 146 DPR 791 (1998); <u>Soto López v. Colón Meléndez</u>, 143 DPR 282 (1997); <u>Díaz v. Alcalá</u>, *supra*; <u>González v. Suárez Milán</u>, *supra*; <u>Milán Rodríguez v. Muñoz</u>, 110 DPR 615 (1981); <u>Casiano v. Tribunal Superior</u>, 101 DPR 327 (1973); <u>Rubio Sacarello v. Roig</u>, 84 DPR 344 (1962); <u>Meléndez v. Tribunal Superior</u> 77 DPR 535 (1954); <u>Puigdollers v. Monroig</u>, 26 DPR 310 (1918).

(d) *La dedicación pasada y futura a la familia*

La incorporación de este factor en Puerto Rico ha sido criticada, porque responde a un sistema compensatorio como el español y no a uno alimentario como el nuestro. Raúl Serrano Geyls, *La nueva ley de pensiones alimentarias post-divorcio*, 30 REV. JUR. UIPR 97, 118 (1996). En aquel sistema, esta circunstancia se utiliza para compensar al ex cónyuge que ha tenido gran dedicación a la familia. Al respecto señala García Cantero que "en estos casos en que el sacrificio de uno ha sobrepasado lo normal, parece justo compensarle de alguna manera con una notable pensión por desequilibrio." II MANUEL ALBALADEJO, COMENTARIOS AL CÓDIGO CIVIL Y COMPILACIONES FORALES, 434 (1981)(Gabriel García Cantero, autor del Comentario). Se trata, pues, de un criterio de carácter subjetivo que exige que el juzgador examine la aptitud del cónyuge hacia la vida familiar **al fijar la cuantía** de la pensión.

Ahora bien, la dedicación pasada y futura a la familia no debe utilizarse ni para conceder ni para negar el derecho a la pensión. Considerar la dedicación a la familia como factor para determinar **la concesión** de la pensión tiende a acercarnos a la antigua figura de la culpa, particularmente para evaluar

negativamente el grado de dedicación demostrado. Esa aplicación sería inconsistente con la intención del legislador de fundamentar la concesión de la pensión tan sólo en las circunstancias económicas de

los ex cónyuges, descartando expresamente la relación culpa-inocencia.[33]

(e) *La colaboración con su trabajo en las actividades mercantiles, industriales o profesionales del otro cónyuge.*

La consideración de esta circunstancia también tiene un fuerte carácter indemnizatorio y, según nos señala la doctrina, está vinculada con la figura del enriquecimiento injusto.[34] La lógica indica que la colaboración plena en las actividades del ex cónyuge reclamado debe suponer un incremento en la pensión concedida.

(f) *La duración del matrimonio y de la convivencia conyugal.*

Al igual que el factor anterior, éste tiene naturaleza compensatoria más que alimentaria. En su versión española ha sido interpretado como un ejemplo del carácter indemnizatorio de la pensión y debe entenderse como que "a mayor convivencia mayor pensión".[35]

---

[33] Nos parece que la opinión disidente no sopesa el criterio de "dedicación pasada y futura a la familia". La reclamante, dedicó 27 años a la familia constituida con el reclamado, dedicándose precisamente a las funciones tradicionales del hogar. Más aún, cuida de su nieta, lo cual constituye, a nuestro entender, "la dedicación futura" contemplada en este criterio y no una fuente de ingreso desaprovechada, según lo percibe la opinión disidente. Todo lo anterior puede ser de gran pertinencia a la hora de determinar la cuantía de la pensión.

[34] Véase Serrano Geyls, *supra* en las págs. 118-119.

[35] Albaladejo, *supra* en la pág. 308; nótese que en este caso las partes estuvieron casadas durante 27 años, lo cual resulta pertinente al criterio de duración del matrimonio y de

La consideración de los incisos (d), (e) y (f) requiere un *caveat*. Todos mencionan circunstancias que exigen que el juzgador examine la aptitud de los ex cónyuges hacia su previa vida conyugal. No hay duda de que el legislador considera importante la aportación y ayuda que brindó el ex cónyuge reclamante a la convivencia y situación conyugal mientras estaba vigente el matrimonio. Ahora bien, la incorporación al artículo 109 de este segundo grupo de circunstancias, que indubitadamente son de carácter subjetivo, tiene que verse en el contexto de la decisión de eliminar la consideración de la relación culpa-inocencia como factor para la concesión de la pensión. Por eso, concluimos que las circunstancias incluidas en los incisos (d), (e) y (f) necesariamente guardan relación con la cuantía de la pensión y no con su concesión. Debe hacerse particular hincapié en que una vez determinada la necesidad, por cualquier medio, los factores contenidos en estos incisos no pueden utilizarse para descartar la pensión.

*(g) El caudal y medios económicos y las necesidades de uno y otro cónyuge.*

*(h) Cualquier otro factor que considere apropiado dentro de las circunstancias del caso.*

Los últimos dos factores añadidos al enmendar el artículo 109 resultan básicamente redundantes e innecesarios. El primero es una paráfrasis del criterio de "necesidad" establecido en el primer párrafo del artículo 109, que establece la pensión para el ex cónyuge "que no cuente con medios suficientes para vivir." Además, reitera una consideración reconocida por la jurisprudencia que

convivencia conyugal y por lo tanto relevante al momento de

surge de la lógica interna de la figura de la necesidad como presupuesto de la pensión de ex cónyuge, a saber, la capacidad del ex cónyuge reclamado para proveerla. En cuanto al último criterio, el legislador confirma lo que ya se infiere de la primera oración del segundo párrafo, es decir, que los criterios añadidos no son *numerus clausus*.[36]

En resumen, si observamos detenidamente las enmiendas de 1995, nos percatamos de que ninguna de éstas debe interpretarse de manera contraria a la clara intención legislativa de descartar la culpa como presupuesto para conceder o negar la pensión, como tampoco la de eliminar las diferencias entre los géneros. Igualmente claro es el mandato legislativo a los tribunales, que les requiere conceder o negar la pensión sobre la base de la necesidad del ex cónyuge reclamante y la capacidad económica del ex cónyuge a quien se le reclama. Nos parece que ese parámetro es suficiente para dirigir la sana discreción de los Tribunales de Primera Instancia.

Dado su carácter de *numerus apertus*, las ocho circunstancias añadidas en 1995 son más bien ejemplos de aquellas que puede tomar en cuenta un juez al determinar la

---

determinar la cuantía de la pensión.

[36] Debemos señalar, como ejemplo de uno de los criterios adicionales que pueden considerarse en este caso para evaluar la cuantía de la pensión, que la demandante señora Jaime Jaime vive en la antigua casa conyugal. Éste es claramente uno de los elementos que las partes pueden acordar al amparo del artículo 90 del Código Civil español y que la doctrina interpretativa del artículo 97 de dicho código, reconoce como circunstancia a considerar al fijar el monto de la pensión. Raúl Serrano Geyls, *La nueva ley de pensiones alimentarias post divorcio*, 30 Rev. Jur. UIPR. 97, 121 (1996).

pensión de ex cónyuge. Interpretarlas como que imponen al reclamante una obligación específica de prueba, constituye una interpretación demasiado restrictiva y contraria al espíritu solidario y alimentario que rige esta figura.

La alegación suficiente para reclamar la pensión de ex cónyuge es, por tanto, aquella que establezca que se carece de medios "suficientes para vivir". Para demostrar esa necesidad sólo se requiere presentar cualquier prueba pertinente tendente a establecer que no se cuenta con dichos medios suficientes para vivir y no necesariamente que se es anciano, incapacitado o incapaz de trabajar.

III.

En su sentencia de 1 de julio de 2002, el Tribunal de Primera Instancia hizo determinaciones de hechos sobre varias de las circunstancias añadidas al artículo 109 en 1995, entre ellas, la edad de la demandante, su preparación académica, la asunción de deudas por el ex cónyuge demandado y el uso continuo del anterior hogar conyugal. Sin embargo, no las tomó en consideración al emitir su decisión. Tampoco consideró otros factores, como la dedicación de la reclamante a la familia, la duración del matrimonio y la convivencia conyugal, sobre los cuales se presentó prueba. Resulta inaceptable que el tribunal inferior haya elaborado determinaciones de hechos sobre varios de estos aspectos sin otorgarles mayores consecuencias, pues despachó la controversia fundamentándose equivocadamente en que la demandante debía

reclamar alimentos en primer lugar a sus parientes, al amparo del artículo 142.

Una interpretación objetiva de los hechos adjudicados por el tribunal de instancia nos lleva a resolver que no erró el Tribunal de Apelaciones al conceder la pensión solicitada y ordenar la devolución del caso al Tribunal de Primera Instancia para que determine el monto de la pensión. No hay duda que ese tribunal está en mejor posición para sopesar la necesidad demostrada por la ex-esposa y la situación económica del ex-esposo.

Por los fundamentos anteriormente expuestos, se confirma la decisión recurrida y se devuelve el caso al Tribunal de Primera Instancia, para que proceda conforme a lo aquí establecido.

Se dictará sentencia de conformidad.


Liana Fiol Matta
Jueza Asociada

EL TRIBUNAL SUPREMO DE PUERTO RICO


Israel Morales Vargas

    Demandante-Peticionario

            v.

Adoración Jaime Jaime

    Demandada-Recurrida

Certiorari

CC-2002-908


SENTENCIA


En San Juan, Puerto Rico, a 23 de noviembre de 2005.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte integrante de la presente Sentencia, confirmamos el dictamen emitido por el Tribunal de Apelaciones y devolvemos el caso al Tribunal de Primera Instancia para que proceda conforme a ésta.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal Supremo Interina. El Juez Asociado señor Fuster Berlingeri emitió Opinión de conformidad. El Juez Asociado señor Rebollo López disiente con Opinión escrita. El Juez Asociado señor Rivera Pérez disiente sin opinión escrita.


Dimarie Alicea Lozada
Secretaria del Tribunal Supremo
Interina

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Israel Morales Vargas

    Demandante-Peticionario


      vs.                         CC-2002-908   Certiorari


Adoración Jaime Jaime

    Demandada-Recurrida


Opinión de Conformidad emitida por el JUEZ ASOCIADO SEÑOR FUSTER BERLINGERI.


San Juan, Puerto Rico, a 23 de noviembre de 2005.


      Aunque estoy conforme con la opinión del Tribunal, me ha parecido menester hacer unas breves expresiones particulares, para enfatizar aspectos de lo que aquí hoy resolvemos.

      En el caso de autos, tenemos dos asuntos medulares planteados ante nos. El primero de ellos es si una persona divorciada que tiene necesidad de alimentos debe reclamarlos en primer lugar a su ex-cónyuge al amparo del Art. 109 del Código Civil, o si debe acudir antes a sus parientes más próximos al amparo del Art. 143 de ese Código.

      Un examen de nuestra jurisprudencia relativa al Art. 109 referido lleva inexorablemente a la conclusión de que el sentido originario de esa

disposición incluía la intención legislativa de que si la persona reclamando los alimentos cumplía con los requisitos correspondientes, **la obligación de concederlos le correspondía primeramente al ex-cónyuge**. Nunca lo resolvimos precisamente así, **pero ello estaba claramente sobrentendido**. Véase, <u>Meléndez v. Tribunal Superior</u>, 77 D.P.R. 535, 542 (1954); <u>Suria v. Fernández Negrón</u>, 101 D.P.R. 316, 319-320 (1973); <u>Milán Rodríguez v. Muñoz</u>, 110 D.P.R. 610, 613 (1981). Esa primordial obligación del ex-cónyuge -originalmente del marido- **quien responde antes que los parientes cercanos**, realmente nunca ha estado en dudas. Hoy tenemos, pues, la ocasión para afirmarla expresamente.

Es menester advertir enfáticamente, además, que aunque la obligación del ex-cónyuge referida nace de disposiciones estatutarias y de relaciones humanas distintas a las de los parientes cercanos, **ello no significa que las respectivas obligaciones alimentarias tengan un carácter o propósitos diferentes**. Por el contrario, según hemos resuelto antes, ambas comparten en gran medida "las características esenciales que tiene la institución de los alimentos". Como bien reconoce la mayoría del Tribunal aquí, y como habíamos pautado antes en <u>González v. Suárez Milán</u>, 131 D.P.R. 296, 301 (1992), ambas están investidas del mayor interés público, porque en el fondo ambas surgen del derecho fundamental de todo ser humano a existir y desarrollar plenamente su personalidad. Es decir, ambas se imponen como parte de "las condiciones necesarias de la vida progresiva de la humanidad", <u>González v. Suárez Milán</u>, *supra*; ambas se originan en "un propósito de solidaridad humana", <u>Suria v. Fernández Negrón</u>, *supra*.

No debe perderse de vista esta naturaleza esencial común a ambas obligaciones alimentarias, porque de ella se han de derivar las respuestas correspondientes a las interrogantes que puedan surgir sobre estas obligaciones en otros casos o situaciones.

## II.

El segundo asunto planteado en el caso de autos es relativo al significado de la importante enmienda que se le hizo al Art. 109 en 1995, cuando *inter alia* el legislador añadió ocho criterios que deben tenerse en cuenta al conceder los alimentos dispuestos en esa disposición.

Sobre este otro asunto, cabe enfatizar que ya antes hemos interpretado el significado y el alcance de la referida modificación del Art. 109 del Código Civil. En <u>Díaz v. Alcalá</u>, 140 D.P.R. 959 (1996), hicimos claro que los ocho criterios en cuestión se refieren a circunstancias que un tribunal debe ponderar **"al fijar el monto de la pensión"**, *Id*, pág. 978; o sea **"para fijar la cuantía"** *Id*, pág. 980. Lo reiteramos por tercera vez en <u>Díaz v. Alcalá</u>, *supra*, cuando señalamos que estos criterios **"precisamente serán los elementos de juicio judiciales para fijar el monto de cualquier pensión post divorcio"**, *Id*, pág. 982. No se trata, pues, de requisitos a considerar primordialmente para decidir **si se concede o no la pensión**. Más bien, como claramente se señala en el propio Art. 109 del Código Civil, son criterios a tomar en consideración por el tribunal al decidir **cuánto** de alimentos ha de asignarse. Dice dicho Artículo en lo pertinente:

> "El Tribunal concederá los alimentos a que se refiere el párrafo anterior, tomando en cuenta, entre otras, las siguientes circunstancias:
>
> a) . . .
>
> b) . . .
>
> Etc."

El claro propósito de la referida enumeración de criterios a tomar en cuenta es que el tribunal pueda hacer la evaluación más justa posible de la **cuantía** de la pensión alimentaria que reclama un ex-cónyuge al otro, una vez se ha determinado la procedencia de ésta, la que a su vez depende de que la parte reclamante tenga necesidad de ella. Eso fue lo que correctamente pautamos antes en Díaz v. Alcalá, *supra.*

Nótese, además, que hubo otro aspecto fundamental que también establecimos en Díaz v. Alcalá, *supra*, sobre este asunto. Allí claramente indicamos que las enmiendas al Art. 109 realizadas en 1995 modificaban **"sustancial y significativamente el alcance y la visión legislativa de la pensión post divorcio"**. *Id*, a la pág. 977. Adoptamos por referencia, en lo pertinente, la conceptualización española de tal pensión y señalamos que se trataba **"de un acto de *justicia equitativa legislativa* que trasciende la antigua noción de divorcio por culpa."** Explicamos que su finalidad incluye atender el desequilibrio económico resultante de un divorcio, cuanto éste aparejaba un empeoramiento de la posición material de uno de los cónyuges. Citamos al comentarista G. García Cantero para hacer referencia específica a la necesidad de proteger a la mujer que estando casada dedicó su vida al hogar y por carecer de una especialización profesional, habría de sufrir un grave deterioro en su situación económica por razón del divorcio.

El Art. 109 en vigor, pues, existe ahora precisamente para procurar que se trate con equidad a una ex-cónyuge como la del caso de autos; para que una mujer que se dedicó plenamente a las labores domésticas como madre y esposa, no sufra de repente un grave desequilibrio económico al ser enfrentada con un divorcio; para protegerla de una única opción de tenerse que ir a trabajar como empleada doméstica. Díaz v. Alcalá, *supra*, pág. 980.

En Díaz v. Alcalá, *supra*, reconocimos la realidad innegable de que con gran frecuencia la mujer casada se entrega por muchos

años al cuidado del esposo y de los hijos, y sacrifica así la época en que pudo desarrollar sus cualidades intelectuales y profesionales, para luego encontrarse al momento de la crisis conyugal con un grave desvalimiento económico. Nos adherimos a la posición de que por razones de **equidad** tal situación desvalida no puede permitirse. Siguiendo la tendencia moderna europea, resolvimos que mediante el Art. 109 se procura no sólo proveer asistencia al ex-cónyuge que la necesita sino, además, intentar una reparación de los prejuicios económicos causados por la disolución del matrimonio. Véase, García Garrido, *La Pensión Compensatoria*, XXV Rev. Jur. UIA 449 (1991). El ex-cónyuge que no cuente con medios suficientes

para vivir tiene un claro derecho a ser socorrido por el otro que tiene recursos, cuando el divorcio aparejó para aquel un deterioro económico con respecto a su situación anterior en el matrimonio. Para ello existe precisamente el Art. 109 del Código Civil. Esta renovada concepción justiciera del Art. 109, afín a la que expresamos en <u>Suria v. Fernández Negrón</u>, *supra*, fue claramente formulada en <u>Díaz v. Alcalá</u>, *supra*, y forma parte integral ya de nuestro haber jurisprudencial. Es claramente aplicable al caso de autos, como lo hace la mayoría del Tribunal en su opinión aquí.

JAIME B. FUSTER BERLINGERI
JUEZ ASOCIADO

EL TRIBUNAL SUPREMO DE PUERTO RICO


Israel Morales Vargas

    Demandante-Peticionario

       vs.                CC-2002-908     CERTIORARI

Adoración Jaime Jaime

    Demandada-Recurrida



OPINIÓN DISIDENTE EMITIDA POR EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ

San Juan, Puerto Rico, a 23 de noviembre de 2005


Lamentablemente no podemos suscribir, y endosar con nuestro voto, la Opinión emitida por la Mayoría en el presente caso. Ello por entender que la misma no sólo contradice el claro texto de la Ley Núm. 25 de 16 de febrero de 1995,[37] y su historial legislativo, sino que, además, crea un peligroso precedente que --como el boomerang-- regresará a este Tribunal, ante el descalabro jurídico que, sin lugar a dudas, creará en los foros inferiores. Veamos.

---

[37] Ley que enmendó el Artículo 109 del Código Civil.

I

Tal y como surge de la Opinión mayoritaria, el Sr. Israel Morales Vargas, demandante peticionario, y la Sra. Adoración Jaime Jaime, demandada recurrida, contrajeron matrimonio en el año 1974 y se divorciaron el 5 de septiembre de 2001.[38] A raíz de este divorcio el señor Morales Vargas asumió todas las deudas gananciales ascendentes a $480.00 mensuales y una deuda de $1,278.00 de uno de sus hijos. La señora Jaime, por su parte, permaneció en posesión y disfrute de los bienes y efectos propios del hogar.

A un mes y medio de obtenido el divorcio, la señora Jaime presentó una petición de alimentos, de ex-cónyuge, al amparo del Artículo 109 del Código Civil, 31 L.P.R.A. sec. 385. Como único fundamento a su petición la señora Jaime alegó que "carece de suficientes medios para vivir" y que "nunca ejerció ningún trabajo por el cual percibiera un salario."[39] Además, señaló que su ex-cónyuge cuenta con medios económicos suficientes para satisfacer la pensión solicitada por ella.

Oportunamente, el señor Morales Vargas presentó su oposición a la moción formulada por su ex-esposa, aduciendo que la misma debía ser únicamente considerada a la luz del Artículo 144 del Código Civil, 31 L.P.R.A. sec. 563 --sobre alimentos entre parientes-- y no al amparo del Artículo 109. Alegó, en síntesis, que la obligación del ex-cónyuge contemplada en el Artículo 109, ante, es de carácter subsidiario y se torna exigible sólo cuando ninguno de los obligados a alimentar por el Artículo 144

---

[38] Durante su matrimonio procrearon seis (6) hijos; todos mayores de edad al momento del divorcio.

[39] Explicó que durante su matrimonio se dedicó a cuidar sus hijos y a ser ama de casa.

puede hacerlo. Argumentó, por último, que en este caso su ex-esposa vive en el hogar "conyugal" con dos de sus hijos --ambos mayores de edad-- quienes, según alegó, pueden aportar a sus gastos.

Luego de varios trámites procesales, el 1ro. de julio de 2002 el Tribunal de Primera Instancia, Sala Superior de Humacao, emitió una resolución en la cual realizó las siguientes determinaciones de hecho:

1. La peticionaria [Jaime Jaime] nunca ha ejercido otra labor que la de madre, esposa y ama de casa. <u>Cursó hasta noveno grado de escuela intermedia</u>. <u>Cuenta con la edad de cincuenta y un (51) años</u>. Durante el matrimonio la única fuente de ingresos provino de Dos [sic] Israel Morales Vargas. El demandado [el demandante, Morales Vargas] hace cinco (5) años comenzó a trabajar en la Corporación del Fondo del Seguro del Estado en el área de archivo.

2. La peticionaria declaró que actualmente solamente cuenta con $180.00 mensuales que recibe por concepto del Programa de Asistencia Nutricional para ella y su hija. Sus gastos mensuales son: comestibles $240.00, ropa $50.00, efectos personales $15.00, agua $15.00, energía eléctrica $80.00, transportación pública $15.00. Continúa haciendo uso del Plan Médico de su esposo hasta abril de 2002, fecha en que cesará dicho beneficio. Tiene gasto mensual [sic] en medicina de aproximadamente $20.00 a $25.00. En cuanto a los demás gastos se sometió la Planilla de Información Económica en evidencia. <u>Conforme a la misma la peticionaria tiene un gasto mensual de $597.33</u>.

3. <u>También declaró que reside en el hogar ganancial y está en posesión y disfrute de los bienes y efectos propios del hogar</u>. Actualmente <u>viven en su hogar dos de sus hijos</u>, <u>ambos son mayores de edad</u> [sic]. Uno de ellos está casado y vive con su esposa y una hija, también en el hogar de la peticionaria. La demandada <u>no trabaja</u>, se ocupa de las tareas propias del hogar <u>y ha cuidado de la nieta mientras su hijo y la esposa de éste trabajan</u>.

4. Los servicios de la vivienda están a nombre del demandado, excepto el teléfono que está a nombre del hijo que vive en el hogar quien lo paga porque es suyo. <u>Durante el matrimonio hubo deudas gananciales pero el demandado no le dejó deudas, ya que él las asumió</u>.

5. <u>El demandado [demandante] trabaja en el Fondo del Seguro del Estado en Caguas y tiene un ingreso de</u>

> $2,000.00 mensuales. Recibe un Bono de Navidad de
> $1,500.00. No tiene ningún otro tipo de trabajo.
> Reside con sus padres, quienes cuentan con la edad
> de 84 y 82 años respectivamente, en la residencia
> de éstos. Él paga todas las deudas gananciales que
> ascienden a $480.00 mensuales, además de una deuda
> de teléfono perteneciente a su hijo y que él tuvo
> que asumir. Dicha deuda era de $1,278.00 y paga
> $125.00 mensuales. Estudia los sábados un curso de
> reparación de computadoras. Alegó padecer de
> desbalance y tiene un gasto mensual de medicamentos
> de $25.00 los cuales no cubre el plan. Tiene un
> préstamo de estudiante que paga $120.00 mensuales.
> Tiene un gasto de luz de $100.00 bi-mensual.
> (Énfasis suplido.)

Tomando en consideración estas determinaciones de hecho, el foro primario declaró sin lugar la solicitud de alimentos presentada por la Sra. Jaime Jaime, concluyendo que no procedía la concesión de una pensión alimentaria de ex-cónyuge a su favor, pues "para que proceda la acción la promovente debe carecer de medios para subsistir y cubrir sus necesidades alimentarias [y no tener] otra forma de obtener alimentos que necesita [sic], excepto reclamarlos al ex-cónyuge bajo el Artículo 109 del Código Civil."

Al fundamentar su determinación el tribunal de instancia llamó la atención hacia el hecho de que la peticionaria "cuenta con descendientes y colaterales capacitados para ayudarle, dos de los hijos y la familia de uno de ellos, disfrutan y se benefician de la posesión de los bienes muebles e inmueble que ostenta la [señora Jaime], sin pagar canon o merced alguna por ello." Asimismo, señaló que "[h]ay que reconocer que el [señor Morales Vargas] asumió todas las deudas de la extinta sociedad legal de gananciales, no dejando deuda alguna a la [señora Jaime]."[40]

---

[40] El foro primario concluyó que la "promovente [tiene que] reclamar[le] en primer lugar a sus descendientes, en segundo lugar a sus ascendientes y en tercer lugar a sus parientes colaterales, hermanos y sobrinos." Explicó que si éstos no

Inconforme con esta determinación, la Sra. Jaime Jaime acudió al Tribunal de Apelaciones, el cual revocó el dictamen del foro primario.[41] Insatisfecho con el dictamen emitido por el foro apelativo intermedio, el señor Morales Vargas acudió ante este Tribunal --vía *certiorari*-- solicitando la revisión de dicha determinación, recurso que fue expedido el 14 de febrero de 2003.[42]

En el día de hoy una mayoría de este Tribunal confirma la determinación del Tribunal de Apelaciones al concluir, en primer lugar, que cuando la necesidad del reclamante está vinculada al divorcio, o surge como consecuencia de éste, procede reclamar alimentos al ex-cónyuge al amparo del Artículo 109 del Código Civil y que sólo puede recurrirse a los parientes enumerados en el Artículo 143 cuando éste no cuenta con medios suficientes para sufragar dichos alimentos.

En segundo lugar, la Mayoría concluye que para reclamar esta pensión de ex-cónyuge es suficiente con que el reclamante pruebe un estado de necesidad, lo cual, según la Mayoría, se logra con presentar "cualquier" prueba tendente a demostrar la carencia de medios "suficientes para vivir".

---

pueden sufragar los alimentos que se reclaman "entonces es de aplicación la obligación del ex-cónyuge contemplada en el Art. 109."

[41] El referido foro apelativo resolvió que "procede imponerle una pensión alimentaria a Israel Morales Vargas [a favor de Jaime Jaime]". Ello, en atención a que, según su criterio, "aun estableciendo que el ex-cónyuge reclamante puede acudir a sus parientes para alimentos, entendemos que en primera instancia éstos deben ser reclamados al ex-cónyuge, a tenor con el Artículo 109, *supra*."

[42] El 30 de junio de 2003, habiendo recibido sólo el alegato del demandante peticionario, le concedimos un término de veinte (20) días a la señora Jaime Jaime para que compareciera ante este Tribunal. El 20 de agosto de 2003, aún sin la comparecencia de la recurrida, se dio por sometido el recurso.

II

De entrada, precisa puntualizar que estamos totalmente conformes con la conclusión a la que llega la Mayoría en cuanto a que los Artículos 109 y 143 del Código Civil de Puerto Rico son dos tipos de disposiciones separadas e independientes que atienden situaciones distintas y que no pueden ser interrelacionadas de la forma que pretende el aquí peticionario.

A esos efectos, debemos señalar que, aun cuando simpatizamos con el planteamiento del peticionario, en cuanto éste alega que entre los ex-cónyuges no existe ninguna relación de afinidad o consanguinidad que justifique la obligación alimentaria que impone el Artículo 109 del Código Civil, somos del criterio que este Tribunal está impedido de establecer la normativa que se nos propone, por constituir dicha acción un acto de legislación judicial que, llana y sencillamente, nos está vedado.

Ahora bien, lo que no podemos, bajo ningún concepto, suscribir es la normativa que pretende establecer la Mayoría en cuanto al tipo de prueba que debe presentar el ex-cónyuge reclamante al solicitar alimentos *post divorcio*. Sobre este particular se establece que para reclamar este tipo de alimentos el ex-cónyuge sólo tendrá que demostrar que carece de medios suficientes para vivir, lo cual ––según la teoría esbozada por la Mayoría–– podrá establecerse presentando "cualquier" prueba pertinente. Asimismo, se intima que al reclamar esta pensión

no será necesario que el ex-cónyuge solicitante establezca las razones que le impiden proveerse su propio sustento.

Para llegar a esta conclusión la Mayoría se enfrasca en una extensa explicación histórica de los criterios establecidos en el Artículo 109 y, luego de llevarnos en un viaje de estudios por varias jurisdicciones, al abordar el navío erróneo, arriba al puerto equivocado, concluyendo que ninguno de estos criterios "añade carga probatoria específica a la reclamación." Esto es, de un solo plumazo la mayoría de este Tribunal ha eliminado la aplicación práctica de estos criterios, ignorando por completo el propósito que emana claramente de su historial legislativo. Veamos.

Como es sabido, mediante la aprobación de la Ley Núm. 25 de 16 de febrero de 1995 la Asamblea Legislativa enmendó el Artículo 109 del Código Civil con el propósito principal de reconocer estatutariamente el derecho alimentario *post divorcio* a ambos ex-cónyuges y eliminar el concepto de culpa contenido hasta ese momento en el referido estatuto.[43] Esta enmienda sirvió, además, para añadir una serie de circunstancias que, según se estableció expresamente en el referido articulado, los

---

[43] Además, se estableció la posibilidad de modificar la pensión por alteraciones sustanciales en la situación, los ingresos y la fortuna de uno u otro ex-cónyuge y se eliminó la causal de "vida licenciosa" para la revocación de la pensión alimenticia.

tribunales deben tomar en cuenta al momento de "conceder" la pensión solicitada.[44]

A tenor con el historial legislativo de la Ley Núm. 25, este enfoque respondió a los señalamientos expuestos en el Informe de la Comisión de Gobierno del Senado de Puerto Rico sobre el Proyecto del Senado 652.[45] En su informe de 20 de junio de 1994, la referida Comisión llamó la atención hacia el hecho de que hasta ese momento los criterios para la concesión de alimentos estaban basados exclusivamente en la necesidad del alimentista y los recursos económicos del obligado.

Por esta razón, se recomendó la inclusión de un segundo párrafo al Artículo 109 en el que se enumeran algunas circunstancias adicionales que los tribunales deben tomar en consideración al momento de realizar la determinación de alimentos de ex-cónyuge. Según se expresó, "[e]llo contribuir[ía] a orientar la discreción judicial y a satisfacer las necesidades de los ex cónyuges sobre las bases reales en que está cimentada la institución del matrimonio en la actualidad."[46] Sobre este mismo asunto, en la recomendación que hiciera el Departamento de Justicia con

---

[44] Como vemos, el Artículo 109 hace referencia específica al término "conceder", aunque se ha señalado que algunos de los criterios incluidos en la referida disposición estatutaria --como la cualificación profesional, probabilidades de acceso a un empleo, dedicación pasada y futura a la familia y colaboración a actividades del otro cónyuge-- pueden ser utilizados en la determinación de la cuantía de la pensión solicitada. Véase: Díaz v. Alcalá, 140 D.P.R. 959, 981 (1996).

[45] En el referido Informe se hizo referencia, a su vez, a las recomendaciones que en ese sentido hiciera el Secretario de Justicia.

relación al Proyecto de Enmienda del Artículo 109, se indicó que estos criterios eran "adicionales a los ya reconocidos de necesidad y capacidad económica".

De este modo, se incluyeron ocho criterios valorativos que, según el propio texto del Artículo 109, deben ser tenidos en cuenta por los tribunales al momento de conceder los alimentos. Éstos incluyen el análisis de los acuerdos a que hubiesen llegado los ex-cónyuges, la edad y estado de salud de cada uno de éstos, la cualificación profesional y las posibilidades de empleo del ex-cónyuge reclamante, la dedicación pasada y futura a la familia, la colaboración en las actividades mercantiles, industriales o profesionales del otro cónyuge, la duración del matrimonio y de la convivencia conyugal, el caudal, medios económicos y las necesidades del otro cónyuge y cualquier otro factor que el juzgador estime pertinente.

Como vemos, un análisis responsable de la disposición estatutaria en controversia, y de su historial legislativo, nos lleva inexorablemente a la conclusión de que, al establecer estos criterios, el legislador tuvo la intención de dotar al juez de elementos adicionales de manera que la concesión y determinación de la pensión *post divorcio* no dependiera exclusivamente de la necesidad del reclamante y los recursos del reclamado. Esto es, que la determinación judicial fuera el resultado de una evaluación de la totalidad

---

[46] Véase: Informe de la Comisión de Gobierno del Senado de Puerto Rico de 20 de junio de 1994, pág. 3.

de las circunstancias, prestando particular consideración a los criterios enumerados por el legislador en el Artículo 109.

En un desesperado intento por fundamentar su errónea determinación, e ignorando totalmente la intención legislativa y la letra clara de la Ley, en el caso de autos la Mayoría concluye que los únicos elementos verdaderamente nuevos añadidos al Artículo 109 con la enmienda de 1995 son aquellos que resultan pertinentes para "fijar el monto de la pensión" y que los elementos relacionados con los criterios de necesidad y capacidad --como pueden ser la edad, estado de salud, cualificación profesional y probabilidades de empleo-- "no constituyen nuevos criterios sobre los cuales debe presentarse prueba, sino que fueron elaborados jurisprudencialmente . . . para guiar la discreción del juzgador respecto a la solicitud del excónyuge reclamante."

De esta forma, concluye que ninguno de los criterios contenidos en el Artículo 109, ni siquiera los que reconoce que están directamente relacionados con los criterios de necesidad y capacidad económica, añade carga probatoria específica a la reclamación de una pensión alimentaria *post divorcio* y, por consiguiente, establece que para reclamar dicha pensión es suficiente que se establezca, mediante la presentación de cualquier prueba pertinente, la carencia de "medios suficientes para vivir". Ello no obstante, y de forma altamente contradictoria, reitera el mandato legislativo de que los tribunales deben "conceder o negar la pensión sobre

la base de la necesidad del ex cónyuge reclamante y la capacidad económica del ex cónyuge a quien se le reclama." (Énfasis suplido).

Sin lugar a dudas, la Opinión que hoy emite la Mayoría no sólo crea más interrogantes de las que contesta, sino que, además, evidencia un total desconocimiento de los procedimientos que se suscitan ante una sala de instancia. ¿Cómo ordenarle a un tribunal que resuelva a base de la necesidad del reclamante, cuando al mismo tiempo se releva a dicha parte de su responsabilidad de presentar prueba al respecto? ¿Cómo pretender que estos elementos puedan guiar la discreción del juzgador si se le priva del beneficio de contar con la evidencia pertinente? ¿Qué curso de acción debe tomar un tribunal de instancia cuando un ex-cónyuge reclamante --amparado en la Opinión que hoy emite la Mayoría-- se limite a demostrar que "carece de medios suficientes para vivir" y se niegue a presentar evidencia adicional que permita evaluar responsablemente la procedencia de la pensión solicitada?

Como vemos, la interpretación del Artículo 109 que ha hecho la Mayoría en el presente caso no sólo es contradictoria y difícil de implementar en términos prácticos, sino que, además, es contraria a la intención legislativa de proveer parámetros adicionales a los criterios de necesidad y capacidad, contradiciendo la misma el claro texto de la ley que establece expresamente que las circunstancias allí enumeradas deben ser consideradas al momento de conceder una pensión alimentaria *post divorcio*.

Ya hemos señalado que en "[e]l desempeño normal de sus funciones, los tribunales están obligados a respetar la voluntad legislativa aunque los magistrados discrepen personalmente de la sabiduría de los actos legislativos. Interpretar una ley en forma que sea contraria a la intención del legislador implica la usurpación por la [R]ama [J]udicial de las prerrogativas de la [R]ama [L]egislativa. Por tanto, el intérprete debe abstenerse de sustituir el criterio legislativo por sus propios conceptos de lo justo, razonable y deseable."[47]

En vista de lo anterior, resulta evidente que <u>no</u> le corresponde a este Tribunal enmendar por la vía judicial el Artículo 109 del Código Civil a los fines de eliminar la consideración de los criterios allí enumerados. Sin lugar a dudas, ese es el efecto práctico de la normativa que pretende establecer la Mayoría al resolver que los referidos criterios "son más bien ejemplos" de las circunstancias que puede tomar en cuenta el juez al determinar la pensión de ex-cónyuge y que no imponen al reclamante una obligación específica de prueba.

### III

La incorrección de la actuación de la Mayoría en el presente caso es manifiesta. En su afán por concederle

---

[47] <u>Alejandro Rivera</u> v. <u>E.L.A.</u>, 140 D.P.R. 538 (1996), citando a R.E. Bernier y J.A. Cuevas Segarra, en su obra Aprobación e interpretación de las leyes de Puerto Rico, 2da ed., San Juan, Pubs. J.T.S., 1987, Vol. I, pág. 299.

alimentos a la peticionaria, se olvida por completo de la deferencia y respeto que por años le ha merecido a este Tribunal la voluntad legislativa y recurre a una interpretación que es totalmente contraria a la misma. Además, ha mutilado la discreción judicial reconocida por el estatuto, en la medida en que limita la prueba que tendrá ante sí el juzgador de hechos al momento de evaluar la procedencia de una solicitud de pensión *post divorcio*.

A nuestro modo de ver las cosas, y refiriéndonos específicamente al requisito de necesidad, es más que evidente que a raíz de las enmiendas realizadas en el año 1995 al Artículo 109, al evaluar la procedencia de una reclamación de alimentos de ex-cónyuge, los tribunales están obligados a considerar las "circunstancias" incluidas a esos efectos en la referida disposición estatutaria, particularmente aquellas que estén relacionadas con el mencionado requisito de necesidad.[48]

Sobre este particular debemos aclarar que al establecer estos criterios el legislador no indicó el peso que debía darse a cada "circunstancia", dejando el asunto al arbitrio judicial.[49] Ello no obstante, varios tratadistas puertorriqueños coinciden en que algunos de estos criterios se refieren al derecho y fijación de la pensión ya que, según arguyen, están directamente relacionados con el requisito de

---

[48] Debemos señalar que la discreción que el Artículo 109 le reconoce a los tribunales es en cuanto a la asignación de alimentos y no en la consideración de estos criterios.

[49] Raúl Serrano Geyls, Derecho de Familia de Puerto Rico y Legislación Comparada, San Juan, Ed. Programa de Educación Jurídica Continua Universidad Interamericana, 1997, Vol. I, pág. 764.

"necesidad" o "insuficiencia de medios para vivir".[50] Este es el caso de los criterios relativos a la edad y estado de salud del alimentista, cualificación profesional y probabilidades de acceso a un empleo y caudal y medios económicos de los implicados. *Ibíd.*

De lo anterior se colige que al solicitar una pensión alimentaria *post divorcio,* el ex-cónyuge reclamante no puede limitarse --como arguye la Mayoría-- a probar que "carece de medios de subsistencia", sino que tiene que ir más allá y demostrar las circunstancias que provocan que se encuentre en dicho estado de necesidad. Con relación a este aspecto, la Profesora Sarah Torres Peralta, en su obra La Ley Especial de Sustento de Menores, Ed. Especial 1997, Publicaciones STP, Inc., pág. 3.37, expone que la obligación de demostrar esta insuficiencia se extiende a que el reclamante "no tenga forma de obtener los alimentos que necesita de otra manera que no sea la de radicar reclamación bajo el artículo 109." Asimismo, nos expresa que "[i]gualmente no podrá reclamar alimentos si tiene aptitud para trabajar y procurarse su propio sustento." *Ibíd.*

En el presente caso la única prueba presentada por la reclamante ante el foro de instancia estuvo dirigida a demostrar: que cuenta con 51 años de edad, que durante el periodo de tiempo que estuvo casada con el demandado no ejerció trabajo alguno, pues se dedicó a la casa y al

---

[50] Véase: Raúl Serrano Geyls, Derecho de Familia de Puerto Rico y Legislación Comparada, ante, a las págs. 764-68; Sarah Torres Peralta, La Ley Especial de Sustento de Menores, Ed. Especial 1997, Publicaciones STP, Inc., págs. 3.41-3.49 y Ruth

cuidado de sus hijos, y que actualmente no está empleada. Somos del criterio que estas circunstancias, <u>sin más</u>, no son suficientes para reclamar con éxito una pensión de ex-cónyuge.

A nuestro juicio, <u>resulta necesario que el ex cónyuge reclamante presente evidencia</u>: sobre las gestiones realizadas por él para procurarse un empleo; sobre enfermedades, incapacidades o situaciones especiales que lo inhabiliten para ejercer un trabajo; o que los salarios que percibe, en el empleo en que se desempeña, realmente no son suficientes para cubrir sus necesidades básicas.

Resulta evidente que en el caso de autos la Sra. Jaime Jaime <u>no</u> cumplió con la obligación de presentar prueba suficiente como para mover la discreción del tribunal, al amparo de las disposiciones estatutarias pertinentes, para concederle una pensión de ex cónyuge. La prueba presentada ante el foro de instancia por la Sra. Jaime Jaime <u>demuestra que se trata de una persona relativamente joven que goza de buena salud y que está capacitada para trabajar</u>. Es por ello que el tribunal de instancia <u>correctamente</u> denegó su solicitud de pensión. Es de notar que la mejor evidencia de su productividad, o capacidad para trabajar, es que, al momento de solicitar la pensión aquí en controversia, ella se dedicaba a cuidar a su nieta mientras su hijo y nuera trabajaban. No hay duda que el <u>mero</u> hecho de que una persona cuente con 51 años de edad, no le da a ésta el "derecho" a no

Ortega-Vélez, <u>Compendio de Derecho de Familia</u>, San Juan, Ed. Publicaciones JTS, 2000, T. II, Págs. 594-98.

trabajar y a que la mantengan. Se debe requerir algo más que eso para demostrar necesidad.

La laxa norma jurisprudencial hoy establecida por la Mayoría, sin lugar a dudas, causará una "lluvia" de solicitudes de pensiones de ex-cónyuges ante nuestros tribunales de instancia. Habrá cientos de personas que, incluso, renunciarán a sus empleos y radicarán una solicitud a esos efectos ya que, de hoy en adelante, todo lo que se necesita para la concesión de una pensión de ex cónyuge es, simplemente, tener alrededor de cincuenta años y estar desempleado. No hay que demostrar ni tan siquiera, repetimos, que se han hecho gestiones para conseguir un trabajo. Dicha prueba, conforme la norma establecida por la Mayoría, es impertinente e inadmisible.

Para colmo, la Mayoría expresa --con el propósito de tratar de justificar su errónea posición-- que, en cuanto a los criterios sobre la edad y el estado de salud establecidos en Inciso (b) del Artículo 109, "[e]l juzgador debe ser cuidadoso al evaluar estas circunstancias debido al efecto que éstas pueden tener sobre la productividad de un individuo." Con la referida aseveración, la Mayoría parece insinuar que ser mayor de edad tiene un efecto directo sobre la productividad de una persona, y que las personas maduras sufren una merma en su capacidad productiva.

Además, la Mayoría asevera que "… una persona de 51 años no es joven para propósitos de insertarse por primera vez,

en el mercado de trabajo".[51] Esto parece indicar, primero; que para entrar, por primera vez, en el mercado laboral y ser productivo hay que tener menos de 51 años, y segundo; que una persona de 51 años que, en efecto, se inserte, por primera vez y a esa edad, en el mercado laboral no será productiva.

Repudiamos dichas aseveraciones. Sin lugar a dudas, estos argumentos promueven el discrimen por edad que con tanto ahínco hemos tratado de combatir en Puerto Rico y empaña el esfuerzo de aquellos trabajadores que, a pesar de sus años, mantienen la misma productividad e interés por realizar un trabajo de excelencia.

En mérito de lo antes expuesto, somos del criterio que en el presente caso el foro de instancia no abusó de su discreción al denegar la pensión de ex-cónyuge solicitada, por lo que revocaríamos la determinación que en ese sentido realizó el Tribunal de Apelaciones. En vista de que la Mayoría ha escogido un curso decisorio contrario al antes mencionado, disentimos.


FRANCISCO REBOLLO LÓPEZ
Juez Asociado

---

[51] Véase la nota al calce número 31 de la Opinión mayoritaria.